**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| DYLAN EUGENE DICKENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:20-CV-00182 JAR |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of

Social Security's final decision denying Plaintiff Dylan Dickens's application for supplemental

security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq*., and

child's insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*.

**I.     Background**

On May 11, 2018, Plaintiff filed an application for child's insurance benefits based on his

father's record. Plaintiff also protectively filed a Title XVI application for SSI on April 18, 2018.

In both applications, Plaintiff alleged disability beginning August 7, 2000, when he was four years

old. Plaintiff testified he was unable to work due to his anxiety, anger outbursts, low IQ, and side

effects from medication that made him sleepy. (Tr. 35). After his claims were denied at the initial

administrative level, Plaintiff requested a hearing before an administrative law judge ("ALJ").

Following a hearing on December 11, 2019, the ALJ issued a written decision on February 5, 2020

denying Plaintiff's applications. Plaintiff's request for review by the Appeals Council was denied

on August 5, 2020. Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

## II.      Facts

The Court adopts Plaintiff's Statement of Material Facts (Doc. No. 19-1) to the extent they are admitted by the Commissioner (Doc. No. 26-1). The Court also adopts Defendant's Statement of Additional Material Facts. (Doc. No. 26-2). Together, these statements provide a fair and accurate description of the relevant record before the Court. Additional specific facts will be discussed as necessary to address the parties' arguments.

## III.     Standards

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Adkins v. Comm'r, Soc. Sec. Admin., 911 F.3d 547, 550 (8th Cir. 2018); see also Johnson v. Astrue, 628 F.3d 991, 992 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough that a reasonable mind would accept it as adequate to support the Commissioner's conclusion. Sloan v. Saul, 933 F.3d 946, 949 (8th Cir. 2019) (citing Chismarich v. Berryhill, 888 F.3d 978, 979 (8th Cir. 2018) (per curiam)). The Court may not reverse merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. Chaney v. Colvin, 812 F.3d 672, 676 (8th Cir. 2016). A reviewing court must consider evidence that both supports and detracts from the ALJ's decision. Id. If it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the decision of the Commissioner. Id. In other words, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." Papesh v. Colvin, 786 F.3d 1126, 1131 (8th Cir. 2015). A decision does not fall outside that zone simply because the reviewing court

might have reached a different conclusion had it been the finder of fact in the first instance. Id.

The Court defers heavily to the findings and conclusions of the Social Security Administration.

Wright v. Colvin, 789 F.3d 847, 852 (8th Cir. 2015) (quoting Hurd v. Astrue, 621 F.3d 734, 738

(8th Cir. 2010)).

To determine whether the ALJ's final decision is supported by substantial evidence, the

Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980);

see also Stamper v. Colvin, 174 F. Supp. 3d 1058, 1063 (E.D. Mo. 2016).

The Social Security Act defines as disabled a person who is "unable to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The impairment

must be "of such severity that [the claimant] is not only unable to do his previous work but cannot,

considering his age, education, and work experience, engage in any other kind of substantial

gainful work which exists in the national economy, regardless of whether such work exists in the

immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step process for determining whether a person is disabled.  20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity" ("SGA"). 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001)).

If the claimant has a severe impairment, the ALJ must determine at step three whether any of the claimant's impairments meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

If the claimant's impairment does not meet or equal a Listing, the ALJ must determine the claimant's residual functional capacity ("RFC"). See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00; 20 C.F.R. § 404.1520a(c)(3). RFC is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in light of his impairments. SSR 96–8p. The relevant

mental work activities include understanding, remembering, and carrying out instructions; responding appropriately to supervision and co-workers; and handling work pressures in a work setting. 20 C.F.R. § 404.1545(c).

At step four, the ALJ must determine whether, given his RFC, the claimant can return to his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); Perks v. Astrue, 687 F.3d 1086, 1091-92 (8th Cir. 2012). If the claimant can still perform past relevant work, he will not be found to be disabled; if not, the ALJ proceeds to step five to determine whether the claimant is able to perform any other work in the national economy in light of his age, education and work experience. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v).

Through step four, the burden remains with the claimant to prove he is disabled. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Brock v. Astrue, 674 F.3d 1062, 1064 (8th Cir. 2012). "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Harris v. Barnhart, 356 F.3d 926, 931 n. 2 (8th Cir. 2004); see also Stamper, 174 F. Supp. 3d at 1063.

### IV.    Decision of the ALJ

The ALJ found that Plaintiff, born August 7, 1996, had not attained age 22 as of the alleged onset date of disability, August 7, 2000, or engaged in substantial gainful activity since that date. (Tr. 13). The ALJ found Plaintiff had the severe impairments of borderline intellectual functioning, and a mental health disorder variously diagnosed as bipolar/depressive disorder, ADHD, anxiety, depression, intermittent explosive disorder, bipolar and mood disorder, but that no impairment or

combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14-17).

After considering the entire record, the ALJ determined Plaintiff has the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: Plaintiff should never climb ladders, ropes, or scaffolds; avoid concentrated exposure to unprotected heights and exposure to all hazardous machinery. He can understand, remember, and carry out at least simple instructions and non-detailed tasks, and can perform routine repetitive work according to set procedures, sequence of pace. Plaintiff can maintain concentration and attention for 2-hour segments over an 8-hour period. He can make simple work-related decisions on an infrequent basis; can adapt to routine or simple work changes in a position where such changes are few, if any; can perform work at a normal pace without production quotas; and should not be an integral part of any team. The job should require no contact with the public as part of the job and no more than occasional contact with co-workers and supervisors. (Tr. 17-23).

Based on the testimony of the vocational expert ("VE"), the ALJ concluded that based on Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform, including Tumbler Operator: Dictionary of Occupational Titles (DOT) No. 369.685-034, with 87,500 jobs nationally; Laundry Worker: DOT No. 361.684-014, with approximately 97,500 jobs nationally; and Counter Supply Worker: DOT No. 319.687-010, with 95,300 jobs nationally – all unskilled, medium exertional level jobs. (Tr. 23-24). Thus, the ALJ found Plaintiff was not disabled as defined by the Act. (Tr. 24).

**V.      Discussion**

On appeal Plaintiff argues the ALJ's Step 3 finding is contrary to law and not supported by substantial evidence. Plaintiff contends the ALJ erred by failing to explain why he rejected the

results of more recent intelligence testing (FSIQ scores ranging from 60 to 70) and relied instead on the oldest test result (FSIQ score of 78) to find Listing 12.05B(1) was not satisfied. (Doc. No. 19 at 4). Plaintiff further argues the ALJ's findings regarding Listing 12.05B(2) (the "paragraph B criteria") are not supported by substantial evidence. (Id. at 4-11). Lastly, Plaintiff argues the ALJ did not address the third criteria of Listing 12.05B, i.e., that the disorder began prior to age 22, in his decision. (Id. at 12).

In response, the Commissioner acknowledges that the record contains evidence of FSIQ scores of 70 or below (see Tr. 252-53, 435) but that any error in this regard is harmless because Plaintiff must satisfy all of the criteria of Listing 12.05B, which he did not. (Doc. No. 26 at 5). In further response, the Commissioner asserts that substantial evidence supports the ALJ's finding that Plaintiff did not exhibit an extreme or marked limitation in the domains of mental functioning required to satisfy the listing for intellectual disability, found at 20 C.F.R pt. 404, subpt. P. app. 1, § 12.05B. (Id. at 4-10). Lastly, the Commissioner acknowledges the ALJ did not address the third criteria of Listing 12.05B but again argues this is immaterial given Plaintiff's failure to satisfy the second criteria of the listing. (Id. at 9).

**Listing 12.05B**

At Step 3 of the sequential evaluation, if a claimant's impairment meets the criteria of one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d). "To qualify for disability under a listing, a claimant carries the burden of establishing that his condition meets or equals all specified medical criteria." McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). A claimant will not be deemed to meet a listing merely because he has a diagnosis of a condition named therein and meets just some of the criteria. Id. at 612. An impairment that

manifests only some of those criteria, no matter how severely, does not qualify. Lott v. Colvin, 772 F.3d 546, 549 (8th Cir. 2014) (quoting McCoy, 648 F.3d at 611-12; Kemper v. Colvin, No. 4:12 CV 2367 DDN, 2014 WL 1228910, at *12 (E.D. Mo. Mar. 25, 2014) (citing Sullivan v. Zebley, 493 U.S. 521, 530 (1990)).

Listing 12.05 provides the standards for an intellectual disability. To meet Listing 12.05, the claimant must satisfy the diagnostic description in the introductory paragraph[1] and one of the subsections, which range from A through D. See Maresh v. Barnhart, 438 F.3d 897, 899 (8th Cir. 2006) (citing 20 C.F.R. pt. 404, subpt. p, app. 1, § 12.05). Plaintiff's argument on appeal is that he meets Listing 12.05B. This listing requires Plaintiff to demonstrate:

1. Significantly subaverage general intellectual functioning evidenced by a or b:

a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two,[2] of the following areas of mental functioning:

a. Understand, remember, or apply information (see 12.00E1); or

b. Interact with others (see 12.00E2); or

c. Concentrate, persist, or maintain pace (see 12.00E3); or

---

[1] The diagnostic description for intellectual disability in the introductory paragraph to Listing 12.05 refers to significantly subaverage general intellectual functioning, significant deficits in current adaptive functioning, and manifestation of the disorder before age 22. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.05.

[2] The rating of "marked" is defined as "seriously limited" ability to function "independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. 404, Subpt. P, App. 1, 12.00F(2)(d). The rating of "extreme" is defined as "not able to function in this area independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. 404, Subpt. P, App. 1, 12.00F(2)(e).

> d. Adapt or manage oneself (see 12.00E4); and

> 3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05B.

The ALJ found these requirements were not met because Plaintiff has a FSIQ of 78 and does not have extreme or marked limitations in any of the specified categories of mental functioning. (Tr. 16-17). The ALJ did not address the last criteria of the Listing. Because the record requires further clarification on whether Plaintiff meets the requirements of Listing 12.05, the Court will remand the case to the ALJ for further proceedings.

**12.05B(1) – full scale IQ score**

The first criteria of Listing 12.05B concerns IQ test results. The regulations require that IQ test results be sufficiently current to be considered "valid." Billy Joe. T. v. Saul, No. 1:18 CV 215 (JMB), 2019 WL 2603541, at *12 (E.D. Mo. June 25, 2019) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(D)(10)). IQ test results obtained before age 7 are current for 2 years if the tested IQ is less than 40 and 1 year if at 40 or above. Id. And, IQ test results obtained between the ages of 7 and 16 are considered current for 4 years when the tested IQ is less than 40 and for 2 years when the IQ is 40 or above. Id. See also Dickson v. Berryhill, No. 4:16-CV-00267-NCC, 2017 WL 1152038, at *3 (E.D. Mo. Mar. 28, 2017) (same). The IQ scores relied upon by the ALJ were obtained in 2002 when Plaintiff was age 6. (Tr. 279).[3] These test results cannot be considered a valid assessment of Plaintiff's current IQ and thus cannot be relied on to find the first criterion of Listing 12.05B was not satisfied. Billy Joe. T., 2019 WL 2603541, at *12.

---

[3] In 2012, at age 16, Plaintiff scored a full scale IQ of 60 (Tr. 253) and in July 2018, at age 18, Plaintiff scored a full scale IQ of 70 on the Wechsler Adult Intelligence Scale – IV. (Tr. 435).

**12.05B(2)** - **Areas of mental functioning**

In his assessment of Plaintiff's limitations in adaptive functioning, the ALJ noted Plaintiff's alleged difficulty with understanding and remembering but found he has only a mild limitation in this area because he is able to perform multi-step activities and use reasoning and judgment. (Tr. 14). The ALJ found Plaintiff has a moderate limitation in interacting with others, noting he maintains a relationship with friends and family and had a girlfriend at one time. (Id.). The ALJ also noted the record does not document any problems with Plaintiff's ability to function socially when seeking treatment, such as difficulty waiting in public areas, behaving inappropriately with office staff, or inability to form a therapeutic rapport with treatment providers. (Tr. 14-15). In the area of concentration, persistence, and pace, the ALJ found Plaintiff moderately limited, noting he can maintain normal conversation. (Tr. 15). The ALJ also noted that Plaintiff's hobbies included bowling, which required some ability to concentrate, and that he was able to procure a driver's license, although he did not currently drive. (Id.). Lastly, the ALJ found Plaintiff mildly limited in adapting and managing himself because he "retains the ability to perform general routine hygiene functions" and can "make plans and recognize hazards." (Id.).

The Court finds the ALJ did not address evidence in the record which supports greater than mild or moderate limitations in these areas of mental functioning. For instance, while acknowledging that Plaintiff had an individualized education program (IEP) and received special education services (Tr. 18), the ALJ did not discuss Plaintiff's school records demonstrating his difficulty learning and retaining new concepts, repeated inability to keep up with group work, loss of attention and focus, and need for individualized instruction (Tr. 262, 271, 275, 290, 350). Likewise, the ALJ did not address Plaintiff's September 2012 scores from the Brown Attention Deficient Disorder Scales which indicated "markedly atypical, very significant problem[s]" in the

areas of "Organizing, Prioritizing, and Activating to Work," "Focusing, Sustaining and Shifting Attention to Tasks," and "Regulating Alertness, Sustaining Effort, and Processing Speed." (Tr. 252-52). The ALJ does not explain why this record evidence does not support greater limitations in the areas of understanding, remembering or applying information, and concentration, persistence, and pace.

The ALJ also failed to address Plaintiff's documented separation anxiety, particularly as it relates to his mother, and his diagnosis of intermittent explosive anger leading to verbal and/or physical violence in his determination that Plaintiff had only moderate limitations in social functioning and mild limitations in adapting and managing himself. The ALJ emphasizes that Plaintiff had a girlfriend at one time but does not discuss Plaintiff's admission that he "stalked" her and obsessed over her – on one occasion calling and texting her over 300 times. (Tr. 422, 429, 445). This evidence is consistent with the opinions of consultative psychological examiner Dr. Paul Rexroat, State agency psychological consultant Paul Midden, an Ph.D., Nurse Practitioner Gail Matcka, all of whom assessed Plaintiff with a marked limitation in social interaction (Tr. 438, 65, 465), yet the ALJ found them partially persuasive or non-persuasive (Tr. 21-22).

### 12.05B(3) - Onset of impairment before age 22

The ALJ failed to address the third criteria of Listing 12.05B in his decision, yet the record evidence demonstrates Plaintiff's deficits began prior to age 22. He was assessed with adaptive behavior deficits requiring educational accommodation, thus qualifying him for special education services. (Tr. 257, 262, 290, 440). His FSIQ scores of 60, 65, and 70 were obtained prior to the age of 22. (Tr. 252, 253, 435).

**VI.     Conclusion**

Taken together, these reasons lead the Court to conclude that remand for a proper assessment of the 12.05B criteria is appropriate. See Scott ex rel. Scott v. Astrue, 529 F.3d 818, 822 (8th Cir. 2008) ("[W]e have held that a remand is appropriate where the ALJ's factual findings, considered in light of the record as a whole, are insufficient to permit this Court to conclude that substantial evidence supports the Commissioner's decision."); see also Chunn v. Barnhart, 397 F.3d 667, 672 (8th Cir. 2005) (remanding because the ALJ's factual findings were insufficient for meaningful appellate review). On remand, the Commissioner should carefully consider all the record evidence regarding the level of impairment for each of the four areas of adaptive functioning listed in Listing 12.05B(2) and address all the 12.05B factors, including the additional lower IQ scores in the record and onset of impairment.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration in accordance with this Memorandum and Order.

A separate Judgment will accompany this Memorandum and Order.

Dated this 1st day of March, 2022.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**